**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
QUIRKY, INC., *et al.*[1]                                        :    Case No. 15-12596 (MG)
                                                                 :
           Debtors.                                              :    (Jointly Administered)
                                                                 :
                                                                 :
                                                                 :
---------------------------------------------------------------- x

**ORDER (I) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS IN CONNECTION WITH THE
SALE OF CERTAIN ASSETS RELATED TO THE BUSINESS OF
QUIRKY, INC., (II) APPROVING PROCEDURES FOR ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS, (III) APPROVING THE FORM AND
MANNER OF NOTICE, AND (IV) SCHEDULING AN AUCTION AND A SALE
HEARING**

Upon the motion, (the "Motion"),[2] of the above-captioned debtors and debtors in

possession (the "Debtors") for entry of an order (this "Quirky Bidding Procedures Order") ,

pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the

"Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and rules 2002-1, 6004-1, and 6006-1 of the Local Bankruptcy Rules

for the Southern District of New York (the "Local Rules"), (i) authorizing and approving the

bidding procedures with stalking horse bid protections in connection with the sale of certain of

the Debtors' assets related to the business of Quirky, Inc., (ii) approving the form and manner of

notice of the Auction and Sale Hearing, (iii) approving procedures for the assumption and

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Quirky, Inc. (2873); Wink, Inc. (8826); and Undercurrent Acquisition, LLC (9692).  The Debtors' principal offices are located at 606 West 28th Street, Seventh Floor, New York, NY 10001.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

assignment of Assumed Contracts and noticing of related cure amounts, and (iv) scheduling an Auction and a Sale Hearing, all as more fully set forth in the Motion; and upon the *Declaration of Gabe Fried in Support of Debtors' Motion for Entry of (i) an Order (a) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets Related to the Business of Quirky, Inc., (b) Approving Procedures for Assumption and Assignment of Executory Contracts, (c) Approving the Form and Manner of Notice, and (d) Scheduling an Auction and a Sale Hearing; and (ii) an Order Authorizing and Approving the Sale of Assets of Quirky, Inc.* [Docket No. 61] (the "Fried Declaration"); and upon resolution of the *Objection of the United States Trustee to Debtors' Motion for Entry of (i) an Order (a) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets Related to the Business of Quirky, Inc., (b) Approving Procedures for Assumption and Assignment of Executory Contracts, (c) Approving the Form and Manner of Notice, and (d) Scheduling an Auction and a Sale Hearing and (ii) an Order Authorizing and Approving the Sale of Assets of Quirky, Inc.* [Docket No. 80]; and upon resolution of the *Objection of the Official Committee of Unsecured Creditors to the Quirky Bid Procedures Motion* [Docket No. 105]; and this Court having jurisdiction to consider the Motion and the relief requested therein; and consideration of the Motion and the relief requested being a core proceeding; and venue being proper before this Court; and due and sufficient notice of the Motion having been given under the particular circumstances to the Notice Parties; and it appearing that no other or further notice need be provided; and this Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, and all parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.    **Bidding Procedures**.  The Debtors have articulated good and sufficient reasons for authorizing and approving the bidding procedures attached hereto as __**Exhibit 1**__ (the "Quirky Bidding Procedures"), which are fair and reasonable and appropriate under the circumstances and designed to maximize recovery on, and realizable value of, the Quirky Assets.

B.    **Stalking Horse Bid Protections**.  The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of a break-up fee and expense reimbursement (together, the "Bid Protections") to a potential stalking horse bidder (the "Quirky Community Stalking Horse") for the sale of Quirky Assets that includes the Quirky Community and Platform, including:

    i.    the Bid Protections will be the product of negotiations among a potential stalking horse bidder and the Debtors, conducted in good faith and at arm's length, and any transaction that culminates with a potential stalking horse bidder, in consultation with Comerica Bank, and their respective professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Quirky Assets to maximize the value of the Debtors estates;

    ii.    the Bid Protections are an actual and necessary cost and expense of preserving the respective Debtors' estates;

    iii.    the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the potential sale of the Quirky Assets, notwithstanding that the any transaction with a stalking horse bidder is subject to higher or otherwise better offers, and the substantial benefits a potential stalking horse bidder will have provided to the Debtors, their estates and creditors, and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Quirky Assets will be received;

    iv.    the protections afforded to a stalking horse bidder by way of the Bid Protections will be material inducements for, and express conditions of, a stalking horse bidder's willingness to enter into an agreement with the

Debtors, and will be necessary to ensure that a potential stalking horse bidder will continue to pursue any proposed agreement on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

v.     the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the stalking horse bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest or otherwise best available offer for the Quirky Assets, induced the stalking horse bidder to conduct due diligence with respect to the Debtors' business, assets, operations and liabilities, and propose the sale of the Quirky Assets contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Quirky Assets.

C.     **Auction and Sale Notice**.  The form of Auction and Sale Notice attached hereto as **Exhibit 2** is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale of the Quirky Assets, including:  (i) the date, time and place of the Auction (if one is held); (ii) the Quirky Bidding Procedures and certain dates and deadlines related thereto; (iii) the Sale Objection Deadline and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of Quirky Assets; (v) notification of any agreement between the Debtors and a stalking horse bidder that culminates before the Bid Deadline; (vi) instructions for promptly obtaining a copy of an agreement with a stalking horse bidder (if necessary); (vii) a simplified form purchase agreement that may be used for submitting a bid on one or more Products (the "Product Purchase Form"); and (viii) notice of the proposed assumption and assignment of Assumed Contracts to a stalking horse bidder pursuant to an agreement (or to another Successful Bidder arising from the Auction, if any) and the right, procedures and deadlines for objecting thereto.  No other or further notice of the Auction and Sale Hearing shall be required.

D. **Assumption Procedures**.  The Assumption and Assignment Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts, any cure amounts relating thereto and the Assumption and Assignment Procedures.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

## I.      Important Dates And Deadlines

2.      **Sale Hearing**:  November 24, 2015, at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing") is the date and time for the hearing to approve a sale of any or all of the Quirky Assets (each, a "Transaction") and will be held before the Honorable Martin Glenn, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004; *provided, however,* if the  Committee files a notice of objection with the Court on or before November 23, 2015 at 4:00 p.m. (prevailing Eastern Time) with respect to any Transaction, the Sale Hearing with respect to such Transaction will be adjourned and rescheduled for December 7, 2015 at 9 a.m. (prevailing Eastern Time).  The Sale Hearing may be adjourned without further notice other than announcement in open Court or on the Court's calendar.

3.      **Sale Objection Deadline**:  November 12, 2015, at 4:00 p.m. (prevailing Eastern Time) is the deadline to object to entry of a proposed sale order with respect to any Transaction (the "Sale Objection Deadline"); *provided, however,* the Committee shall have until November 23, 2015 at 4:00 p.m. (prevailing Eastern Time) to file a notice of objection with the Court with respect to any Transaction, upon which, the Committee shall have until December 1, 2015 at 4:00 p.m. (prevailing Eastern Time) to file a formal objection. Objections, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local

Bankruptcy Rules and any orders of the Court; (iii) state with particularity the legal and factual

basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served

so the objection is <u>actually received</u> no later than the Sale Objection Deadline by the following

parties (the "<u>Notice Parties</u>"):

| Debtors | Proposed Counsel to the Debtors |
|---|---|
| Quirky, Inc.<br>606 West 28<sup>th</sup>Street<br>New York, New York 10010<br>Attn:  Charles Kwalwasser, Esq.<br>          Ed Kremer | Cooley LLP<br>1114 Avenue of the Americas<br>New, York, New York 10036<br>Attn:  Jeffrey L. Cohen, Esq.<br>          Michael A. Klein, Esq. |
| **United States Trustee** | **Counsel to the Stalking Horse Bidder (if any)** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn:  Paul Schwartzberg, Esq. | |
| **Counsel to Comerica** | **Proposed Counsel to the Committee** |
| Sheppard Mullin<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Attn:  Bill Wyatt, Esq. | Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169<br>Attn: Melanie L. Cyganowski, Esq.<br>          Kevin Zuzolo, Esq. |

**The failure to timely file an objection in accordance with this Quirky Bidding Procedures Order shall forever bar the assertion of any objection to the Quirky Sale Motion, entry of the Quirky Sale Order and/or consummation of the Transaction, including the assumption and assignment of the Assumed Contracts to the Successful Bidder pursuant to the APA, and shall be deemed to constitute any such party's consent to entry of the Quirky Sale Order and consummation of the sale of Quirky Assets and all transactions related thereto.**

4.     **Bidding Dates and Deadlines**:  The following dates and deadlines with

respect to bidding on the Quirky Assets are hereby established (subject to modification as

needed):

a)     <u>Bid Deadline</u>:  November 13, 2015 at 12:00 p.m. (prevailing Eastern Time) is the deadline by which all "Qualified Bids" (as defined in the

Quirky Bidding Procedures) must be actually received by the parties specified in the Quirky Bidding Procedures (the "Bid Deadline"); and

b)      Auction: November 17, 2015 at 10:00 a.m. (prevailing Eastern Time) is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors:  Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036.

## II.      Quirky Bidding Procedures And Related Relief

5.      The Quirky Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved. The Quirky Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the sale of Quirky Assets, and any party desiring to submit a higher or otherwise better offer for the Quirky Assets shall do so strictly in accordance with the terms of the Quirky Bidding Procedures and this Quirky Bidding Procedures Order.

6.      To the extent the Debtors select a stalking horse bidder for any of the Quirky Assets before the Auction, such a stalking horse bidder shall be selected and the Notice Parties and all necessary parties in interest shall be notified no later than November 2, 2015.

7.      As described in the Quirky Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from a stalking horse bidder or if no Qualified Bidder other than a stalking horse bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the stalking horse bidder will be named the Successful Bidder and the Debtors will seek approval agreement entered into with the stalking horse bidder at the Sale Hearing.  In such case, the Debtors may continue to market those assets of the Debtors other than the Quirky Assets.  If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Quirky Community Stalking Horse) in accordance with the Quirky Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8.      If there are no Qualified Bidders and no stalking horse bidder by the Bid Deadline, the Debtors, in consultation with the Committee, may cancel the Auction or extend the Bid Deadline, at their own discretion, for a reasonable time; provided that revised dates for the Auction and Sale Hearing be approved by this Court.

9.      If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or any Transaction.  The Auction will be conducted openly and shall be either transcribed or videotaped.

10.     The Bid Protections described in the Motion are hereby approved to the extent set forth herein.  If a stalking horse bidder becomes entitled to receive the Bid Protections in accordance with the terms of an agreement between the Debtors and the stalking horse bidder (the "Stalking Horse Agreement"), (a) the Debtors are authorized, upon the closing of the Successful Bid or the Back Up Bid (as applicable) and the payment of the purchase price for the Quirky Assets to pay from the proceeds of such purchase price any and all amounts owing to the stalking horse bidder in accordance with the terms of the Stalking Horse Agreement, including the break-up fee not to exceed 3% of the aggregate sale of Quirky Assets and any actual and documented expense reimbursements not to exceed $50,000, without further action or order by the Bankruptcy Court, in accordance with the terms and conditions of the Stalking Horse Agreement and this Quirky Bidding Procedures Order, and (b) a stalking horse bidder shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to any allowable break-up fee and expense reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

11.     To the extent the terms of the Stalking Horse Agreement contradicts this Quirky Bidding Procedures Order, this Quirky Bidding Procedures Order shall govern.

12.     No person or entity, other than a stalking horse bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment in connection with the sale of the Quirky Assets.

13.     Notwithstanding anything in the Quirky Sale Motion or the Quirky Bidding Procedures to the contrary, the sale of Quirky assets shall not include the Personally Identifiable Information of those members of the Quirky Community and Platform that did not log in at any time on or after October 2011.

## III.    Auction And Sale Notice And Related Relief

14.     The Auction and Sale Notice, substantially in the form attached hereto as **Exhibit 2** is hereby approved.

15.     Within (3) business days of entry of the Quirky Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice by first class mail upon the following parties:  (i) the Office of the United States Trustee; (ii) Sheppard Mullin, counsel to Comerica, 30 Rockefeller Plaza, New York, NY 10112 (Attn:  William R. Wyatt, Esq.); (iii) counsel for any statutory committee; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York, (vi) any party known or reasonably believed to have asserted any lien, claim or Encumbrance or other interest in the Quirky Assets; (vii) any party known or reasonably believed to have expressed an interest in acquiring any of the Quirky Assets; and (viii) entities known or reasonably believed to have any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).   The Debtors shall also serve the Product Purchase Form to the members of the Quirky Community and Platform by posting the Product Purchase Form to the Quirky Platform or by electronic mail where available.  No other

or further notice need be given.  The Auction may be adjourned by the Debtors, in consultation

with the Consultation Parties, by filing a notice of adjournment with the Court thereby

adjourning all subsequent dates set forth in the Quirky Bidding Procedures.  No further notice of

any such continuance will be required to be provided to any party.  The Auction may be

adjourned to a later date by the Debtors by filing a notice of adjournment with the Court.  No

further notice of any such continuance shall be required to be provided to any party.  Any

rescheduled date of the Auction (if any) and any subsequent dates set forth in the Bidding

Procedures shall only be made with the consent of the Committee or upon further approval of

this Court.

**IV.**     **Assumption and Assignment Notice And Related Relief**

16.     The procedures set forth below regarding the assumption of the Assumed

Contracts pursuant to section 365(b) of the Bankruptcy Code and assigned to the Quirky

Community Stalking Horse (or other successful bidder arising from the Auction, if any) pursuant

to section 365(f) of the Bankruptcy Code in connection with any Transaction are hereby

approved to the extent set forth herein (the "Assumption Procedures").

17.     These Assumption Procedures shall govern the assumption and

assignment of all Assumed Contracts assumed and assigned in connection with any Transaction:

    (a)     Assumption and Assignment Notice.  As soon as is practicable, the
Debtors shall serve the Assumption and Assignment Notice,
substantially in the form attached hereto as **Exhibit 3** by first class
mail on all counterparties to the Assumed Contracts (and provide a
copy of the same to the stalking horse bidder or if not stalking
Horse Bidder, the Successful Bidder upon completion of the
Auction).  The Assumption and Assignment Notice shall inform
each recipient that its respective contract may be designated as an
Assumed Contract in connection with the sale of Quirky Assets
and should contain (i) the title of the Assumed Contract, (ii) the
name of the Assumed Contract counterparty, (iii) the Debtors'
good faith estimates of the cure amounts required in connection
with such Assumed Contract, (iv) the identity of the stalking horse

10

bidder or Successful Bidder; and (v) the deadline by which the Assumed Contract counterparty must file an objection to the proposed assumption and assignment and/or cure amount, and (vi) the Assumption Procedures relating thereto; provided, however, that service of an Assumption and Assignment Notice does not constitute an admission that such Assumed Contract is an executory contract.

(b)    Objections.  Objections, if any, to the proposed assumption and assignment of the Assumed Contract or the cure amount proposed with respect thereto, must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order entered in these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served upon, so as to be actually received by, the Notice Parties six (6) days before the Sale Hearing.

(c)    Dispute Resolution.  Any objection to the assumption and assignment of a contract or cure amount proposed in connection with the Transaction that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

18.    Any party failing to timely file an objection to the cure amount listed on the Assumption and Assignment Notice (a) shall be forever barred from objecting thereto, including making any demands for additional cure amounts or monetary compensation on account of any alleged defaults against the Debtors, their estates, the stalking horse bidder, or other successful bidder arising from the Auction, if any, with respect to any such Assumed Contract, and (b) shall be deemed to consent to the sale of the Quirky Assets.

19.    The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Quirky Bidding Procedures Order.

20.     This Quirky Bidding Procedures Order shall be effective and enforceable immediately upon entry.

21.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Quirky Bidding Procedures Order.


**IT IS SO ORDERED.**
Dated:  October 27, 2015
         New York, New York


                              _____/s/Martin Glenn_____
                                    MARTIN GLENN
                              United States Bankruptcy Judge

## **EXHIBIT 1**

**Quirky Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
QUIRKY, INC., *et al.*[1]                                   :    Case No. 15-12596 (MG)
                                                            :
                              Debtors.                      :    (Jointly Administered)
                                                            :
                                                            :
                                                            :
                                                            :
------------------------------------------------------------ x

### BIDDING PROCEDURES FOR ASSETS RELATED TO THE BUSINESS OF QUIRKY, INC.

These bidding procedures (the "Quirky Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on October ___, 2015 [Docket No. ___] (the "Quirky Bidding Procedures Order") in the above-captioned jointly administered chapter 11 cases of Quirky, Inc. and its debtor affiliates (collectively, the "Debtors").

These Quirky Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale the ("Sale") of certain of the Debtors' assets related to the business of Quirky, Inc. (the "Quirky Assets"). The Quirky Assets consist of:[2]

(a)    *The Quirky.com platform*:  trademarks, domain name of "quirky.com", database of approximately 1.2 million community members and related personally identifiable information, and the software, source code and third party software licenses necessary to operate the community platform (the "Quirky Community and Platform");

(b)    *Products*:  Through the Quirky Community and Platform, or created by Quirky itself, numerous products including, but not limited to, *Pivot*

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Quirky, Inc. (2873); Wink, Inc. (8826); and Undercurrent Acquisition, LLC (9692). The Debtors' principal offices are located at 606 West 28th Street, Seventh Floor, New York, NY 10001.

[2]    The Quirky Assets also include furniture, fixtures and equipment ("FF&E") and Quirky's lease locations including, inter alia, office furniture, fabrication equipment, 3D printers, electronics and related technology and A/V equipment. The FF&E are being separately marketed directly by Quirky but are available for bidding under the Wink Bidding Procedures or the Quirky Bidding Procedures in connection with a bid on the Wink Assets or the Quirky Assets.

*Power*, *Aros*, and *Cordies* have been designed, manufactured, and distributed for retail and online sales. The IP related to these products including, trademarks, domains, websites, designs, patent applications, patents, prototypes, molds and inventory (together, the "Products");

(c) *Powered by Quirky*: Quirky's "Powered By Quirky" initiative provides large companies with access to its community of inventors and exclusivity to certain categories of product ideas. Through strategic alliances with consumer brands including General Electric, Harman and Mattel, Quirky serves as a major driving force for the innovations behind new products at some of the largest brands in the world ("PbQ");

(d) *Miscellaneous Intellectual Property*: Quirky owns a myriad of domain names and miscellaneous intellectual property, not otherwise described above.

The sale of the Quirky Assets may be implemented pursuant to the terms and conditions of an agreement entered into before the Auction (the "Stalking Horse Agreement"), as the same may be amended pursuant to the terms hereof, subject to the receipt of higher or otherwise better bids in accordance with these Quirky Bidding Procedures. If the Debtors enter into the Stalking Horse Agreement before the Bid Deadline, all Potential Bidders (as defined herein) that provide the required documentation as set forth herein shall be notified of the Debtors entrance into the Stalking Horse Agreement and terms defining such agreement.

> **Copies of the Quirky Bidding Procedures Order, the Stalking Horse Agreement (if any), and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Rust Omni Management, www.quirkybankruptcy.com, or upon request by contacting Rust Omni Management, by telephone at 866-989-6144, or by e-mail at quirky@omnimgt.com.**

## A.    Approval of Stalking Horse Bid Protections.

The Quirky Bidding Procedures Order approved, among other things, the approval of (i) a fee not to exceed 3% of the aggregate sale of the Quirky Assets (the "Break Up Fee"); and (ii) reimbursement of actual, documented, out-of-pocket expenses of up to $50,000 (the "Expense Reimbursement", and together with the Break Up Fee, the "Bid Protections"), which is payable to the stalking horse bidder in the event the Debtors enter into a Stalking Horse Agreement and the Bankruptcy Court approves the sale of the Quirky Assets to any other person or entity other than the stalking horse bidder, and such sale closes.

## B.    Participation Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than the Quirky Community Stalking Horse) interested in submitting a Bid (a "Potential Bidder") must, on or before November 11, 2015 at 12:00 p.m. (prevailing Eastern Time) (the "Preliminary Bid Deadline") deliver (unless previously delivered) the following documents along with an offer for the Quirky Assets in accordance with Section D below (the "Preliminary Bid Documents"):

(a)    an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the stalking horse bidder (if any) and affiliates to the stalking horse bidder, the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"), except that Potential Bidders who have already signed a confidentiality agreement prior to November 11, 2015 need not execute another agreement.

The Preliminary Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtors | Proposed Counsel to the Debtors |
|---|---|
| Quirky, Inc.<br>606 West 28th Street<br>New York, New York 10010<br>Attn:  Charles Kwalwasser, Esq.<br>    Ed Kremer | Cooley LLP<br>1114 Avenue of the Americas<br>New, York, New York 10036<br>Attn:  Jeffrey L. Cohen, Esq.<br>    Michael A. Klein, Esq. |
| **Investment Banker to the Debtors** | **Counsel to Comerica Bank** |
| Hilco Streambank<br>980 Washington Street<br>Suite 330<br>Dedham, Massachusetts 02026<br>Attn:   Gabe Fried | Sheppard Mullin<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Attn:  Bill Wyatt, Esq. |

Within one (1) business day after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors shall determine, in consultation with their advisors and (i) any statutory committee appointed in the chapter 11 cases (the "Committee"); and (ii) Comerica Bank ("Comerica" and, together with the Committee, the "Consultation Parties"), and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Quirky Assets.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") will be permitted to receive due diligence and access to non-public information and may submit bids.

**C.    Access to Due Diligence.**

The Debtors shall provide to each Potential Bidder, upon the request of the Potential Bidder and the execution of a Confidentiality Agreement in the form set forth in section B, reasonable due diligence information, as requested, as soon as reasonably practicable after

such request.  To the extent the Debtors provide any information to any Acceptable Bidder that they had not previously provided to the stalking horse bidder (if any), the Debtors shall promptly provide such information to the stalking horse bidder.  The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

All requests for access to the Debtors' vendors must be made through the Debtors who, in their discretion, may require that a representative of the Debtors be included in any communications between such parties.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not, except with respect to the Quirky Assets, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; provided, however, the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and following consultation with the Consultation Parties, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Quirky Assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Quirky Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated herein.  Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

**The Debtors have designated Hilco Streambank to coordinate all reasonable requests for additional information and due diligence access, including requests for the Microsoft Word version of the Stalking Horse Agreement (if applicable).  Requests for due diligence access and additional information can be made by contacting Gabe Fried at gfried@hilcoglobal.com or 781-471-1238.**

### D.    Bid Requirements.

To be eligible to participate in the Auction, a Potential Bidder (other than the Quirky Community Stalking Horse) must deliver to (i) the Debtors and (ii) their counsel and investment banker, which shall be shared with the Committee within one (1) business day

following receipt thereof, a written, irrevocable offer that must be determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions:

(a) **Same or Better Terms/Identification of Assumed Contracts**.  To the extent that a Bid relates to Quirky Assets that are subject to a Stalking Horse Agreement, each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' contracts the Acceptable Bidder seeks to have assigned, along with a copy of the Stalking Horse Agreement (if any) that is marked to reflect the amendments and modifications from such agreement, which modifications, taken as a whole, may not be materially more burdensome to the Debtors than the Stalking Horse Agreement or inconsistent with these Quirky Bidding Procedures.

(b) **Product Purchase Form.**  To the extent that a bid relates to the Purchase of one or more Products, a Potential Bidder may submit the Product Purchase Form.

(c) **Bid Deposit**.  Each Bid must be accompanied by a 10% cash deposit of the proposed purchase price (the "<u>Good Faith Deposit</u>"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account.

(d) **Minimum Bid Amount (if applicable)**.  To the extent the Debtors enter into a Stalking Horse Agreement, the value of each Bid must exceed the aggregate sum of the following:  (i) the bid set forth in the Stalking Horse Agreement; (ii) the Bid Protections; and (iii) $25,000.

(e) **Good Faith Offer**.  Each Bid must constitute a good faith, bona fide offer to purchase all or a portion of the Quirky Assets.

(f) **No Contingencies**.  A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following:  (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; (iv) the Quirky Assets free and clear of the Encumbrances; and/or (v) any third party consents.

(g) **Irrevocable**.  Each Bid must remain irrevocable for two (2) business days after the Sale Hearing (as defined below).

(h) **Joint Bids**.  The Debtors will be authorized to approve joint Bids in the Debtors' exercise of their reasonable good faith business judgment, following consultation with the Consultation Parties, on a case-by-case basis.

5

(i) **Adequate Assurance Information**. Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with the Consultation Parties, that such Potential Bidder has the financial wherewithal and ability to consummate in the Sale of the Quirky Assets and the assumption of the Debtors' liabilities as set forth in the Bid, including payment of any cure amount with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information.

(j) **No Fees**. Except with respect to the stalking horse bidder, the Bids must not be subject to any break-up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

The Auction may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by filing a notice of adjournment with the Court. No further notice of any such continuance will be required to be provided to any party.

**E.     Qualified Bids.**

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, the Debtors, in consultation with the Consultation Parties, shall determine which Potential Bidders are Qualified Bidders after consultation with their advisors and will notify the Potential Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any Bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.

The stalking horse bidder, if selected, shall be deemed to be a Qualified Bidder. The Stalking Horse Agreement submitted by the stalking horse bidder shall be deemed a Qualified Bid, qualifying the stalking horse bidder to participate in the Auction.

**F.     Bid Deadline.**

Qualified Bids must be received by (i) the Debtors and (ii) their counsel and investment banker **no later than the Bid Deadline of November 13, 2015 at 12:00 p.m. (prevailing Eastern Time)**. The Debtors, their counsel and/or their investment banker will share the Qualified Bids received with the Consultation Parties within one (1) business day following receipt thereof.

**G.     Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and, in consultation with their advisors and the Consultation Parties, identify the Qualified Bid that is, in

the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid") with respect to the relevant Quirky Assets.  Within 24 hours of such determination, the Debtors shall notify the stalking horse bidder (if any) and the other Qualified Bidders as to which Qualified Bid is the Starting Bid.  The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.      No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse Agreement (if applicable) will be deemed the Successful Bid (as defined herein) and the Debtors will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse Agreement and authorizing the sale of the Quirky Assets to the stalking horse bidder at the Sale Hearing.  If no Stalking Horse Agreement is in place and there are no Qualified Bids by the Bid Deadline, the Debtors, in consultation with the Consultation Parties, may cancel the Auction or extend the Bid Deadline for a reasonable amount of time, rescheduling the Auction and Sale Hearing upon further leave of the Court.

**I.      Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Quirky Assets.  The Auction shall commence on **November 17, 2015 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Quirky Community Stalking Horse and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

(a)      the Auction will be conducted openly;

(b)      only the Qualified Bidders, including the stalking horse bidder, shall be entitled to bid at the Auction;

(c)      the Qualified Bidders, including the stalking horse bidder, shall appear in person or through duly-authorized representatives at the Auction;

(d)      only such authorized representatives of each of the Qualified Bidders, the stalking horse bidder, the Committee, members of the Committee, Comerica, the Debtors, and each of their respective advisors shall be permitted to attend the Auction;

(e)      bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by any stalking horse bidder, shall be made in minimum increments in an amount to be determined by the Debtors, in consultation with the Consultation Parties, to be announced at the Auction;

(f)     each Qualified Bidder will be informed of the terms of the previous Bids;

(g)     the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

(h)     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

(i)     absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and

(j)     the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors after consultation with its advisors and the Consultation Parties from time to time on the record at the Auction; provided, however, that any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse Agreement with respect to these Quirky Bidding Procedures.

**The Auction may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by filing a notice of adjournment or making an announcement at the Auction. No further notice of any such continuance will be required to be provided to any party.**

## J.     Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and in consultation with the Consultation Parties, shall identify the highest or otherwise best Qualified Bid(s) that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than any Stalking Horse Bid (or preliminary Bid if there is no Stalking Horse Bid) (the "Successful Bid"), which will be determined by considering, among other things:

(a)     the number, type and nature of any changes to the Stalking Horse Agreement (or preliminary Bid if there is no Stalking Horse Agreement) as appropriate;

(b)     the total expected consideration to be received by the Debtors;

(c)     the likelihood of the bidder's ability to close a transaction and the timing thereof; and

(d)     the expected net benefit to the estates.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other

documents evidencing and containing the terms upon which such Successful Bid was made.  For the avoidance of doubt, the Debtors may accept bids for less than all of the Quirky Assets and there may be more than one Successful Bidder.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder(s) was selected, in accordance with these Quirky Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) each Successful Bid was a Qualified Bid, and (d) consummation of each Successful Bid will provide the highest or otherwise best value for the Quirky Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared a Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.    Sale Hearing.**

A hearing to consider approval of a Qualified Bid submitted by a Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "<u>Sale Hearing</u>") is presently scheduled to take place on **November 24, 2015 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004; *provided, however,* if the  Committee files a notice of objection with the Court on or before November 23, 2015 at 4:00 p.m. (prevailing Eastern Time) with respect a Qualified Bid submitted by a Successful Bidder, the Sale Hearing with respect to such Successful Bid will be adjourned and rescheduled for December 7, 2015 at 9 a.m. (prevailing Eastern Time) with respect to the Quirky Assets set forth in such Qualified Bid.

**The Sale Hearing may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by filing a notice of adjournment or making an announcement at the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

**L.    Designation of Back-Up Bidder.**

If for any reason a Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the sale order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "<u>Back-Up Bidder</u>"), as determined by the Debtors after consultation with their advisors, and in consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "<u>Back-Up Bid</u>").

The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.      Break Up Fee and Expense Reimbursement.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the stalking horse bidder (if any), the Debtors shall be obligated to pay to the stalking horse bidder from the proceeds of the purchase price for the Quirky Assets, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of such purchase price, by wire transfer in immediately available funds to an account designated by the stalking horse bidder, the Break Up Fee and Expense Reimbursement, in each instance in accordance with the applicable provisions of the Stalking Horse Agreement.

**N.      Return of Good Faith Deposit.**

The Good Faith Deposit of a Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for the Quirky Assets.  If a Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within three (3) business days after consummation of the Sale of the Quirky Assets.

**O.      Reservation of Rights.**

The Debtors reserve their rights to modify these Quirky Bidding Procedures, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the Stalking Horse Agreement) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Quirky Assets.

Notwithstanding anything herein or in the Quirky Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that Comerica may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law; provided, however, the Committee's rights to challenge any "credit bid" by Comerica are expressly preserved.

## **EXHIBIT 2**

**Form of Auction and Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                           :

In re:                                       :      Chapter 11
                                             :

QUIRKY, INC., *et al.*[1]                     :      Case No. 15-12596 (MG)
                                             :

           Debtors.                     :      (Jointly Administered)
                                             :
                                             :
                                             :
---------------------------------------------------------------- x

## NOTICE OF SALE BY AUCTION AND SALE HEARING
## FOR ASSETS RELATED TO THE BUSINESS OF QUIRKY, INC.

         **PLEASE TAKE NOTICE** that, on October 1, 2015, Quirky, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. 60] (the "Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale of assets related to the business of Quirky, Inc., (ii) approving the form and manner of notice of the Auction and Sale Hearing, (iii) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (iv) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Sale Motion.  On October ___, 2015, the Bankruptcy Court entered an order (the "Quirky Bidding Procedures Order") approving certain bidding procedures attached thereto as Exhibit 1 (the "Quirky Bidding Procedures").

---

**Copies of the Quirky Sale Motion, Quirky Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Rust Omni Management, at www.quirkybankruptcy.com, or upon request by contacting Rust Omni Management, by telephone at 866-989-6144, or by e-mail at quirky@omnimgt.com.**

---

         **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Quirky Assets (as defined in the Quirky Bidding Procedures).  All interested bidders should carefully read the Quirky Bidding Procedures and Quirky Bidding Procedures Order.  To the extent there are any inconsistencies between this notice and the Quirky Bidding Procedures, the latter shall govern in all respects.

---

[1]        The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Quirky, Inc. (2873); Wink, Inc. (8826); and Undercurrent Acquisition, LLC (9692).  The Debtors' principal offices are located at 606 West 28th Street, Seventh Floor, New York, NY 10001.

**PLEASE TAKE FURTHER NOTICE** that the Quirky Assets that are up for sale include numerous products that have been designed, manufactured, and distributed for retail and online sales and the IP related to these products including, trademarks, domains, websites, designs, patent applications, patents, prototypes, molds and inventory (together, the "Products") Any interested bidder can submit a bid for one or more Products using a simplified form purchase agreement (the "Product Purchase Form") that will be made available upon request.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive competing Qualified Bids within the requirements and time frame specified by the Quirky Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Quirky Assets on November 17, 2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel to the Debtors: Cooley LLP, 1114 Avenue of the Americas, New, York, New York 10036.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Quirky Assets at a hearing scheduled to commence on November 24, 2015 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004; *provided, however,* if the Committee files a notice of objection with the Court on or before November 23, 2015 at 4:00 p.m. (prevailing Eastern Time) with respect a Qualified Bid submitted by a Successful Bidder, the Sale Hearing with respect to such Successful Bid will be adjourned and rescheduled for December 7, 2015 at 9 a.m. (prevailing Eastern Time) with respect to the Quirky Assets specified in the Committee's notice of objection.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed sale of the Quirky Assets, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the *Interim Order Implementing Certain Notice and Case Management Procedures* [Docket No. 44] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than November 12, 2015 at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline") by the following parties (the "Notice Parties") (provided that objections to the identity of the successful bidder (only if different than the Quirky Community Stalking Horse (as defined in the Quirky Bidding Procedures)) may be made at the Sale Hearing):

| Debtors | Proposed Counsel to the Debtors |
|---|---|
| Quirky, Inc.<br>606 West 28th Street<br>New York, New York 10010<br>Attn: Charles Kwalwasser, Esq.<br>　　Ed Kremer | Cooley LLP<br>1114 Avenue of the Americas<br>New, York, New York 10036<br>Attn: Jeffrey L. Cohen, Esq.<br>　　Michael A. Klein, Esq. |
| **United States Trustee** | **Counsel to the Stalking Horse Bidder (if any)** |
| Office of the United States Trustee for the Southern District of New York | |

| 201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn:  Paul Schwartzberg, Esq. | |
| --- | --- |
| **Counsel to Comerica Bank** | **Proposed Counsel to the Committee** |
| Sheppard Mullin<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Attn:  Bill Wyatt, Esq. | Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169<br>Attn: Melanie L. Cyganowski, Esq.<br>Kevin Zuzolo, Esq. |

### CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE OF THE QUIRKY ASSETS ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE QUIRKY BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

---

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

**The proposed Order approving the Sale of the Quirky Assets provides that the Successful Bidder will have no responsibility for, and the Quirky Assets will be sold free and clear of, any successor liability, including:  (a) any debt, liability or other obligation of the Debtors of any kind or nature whatsoever of the Debtors or related to the Quirky Assets other than as expressly set forth in the Stalking Horse Agreement or (b) any claims against the Debtors or any of their predecessors or affiliates.**

---

Dated:  October ___, 2015
     New York, New York

    Jeffrey L. Cohen
    Michael A. Klein
    Richelle Kalnit
    Cooley LLP
    1114 Avenue of the Americas
    New York, New York 10036
    Telephone:  (212) 479-6000
    Facsimile:  (212) 479-6275

    *Proposed Counsel for the Debtors and Debtors in Possession*

## **EXHIBIT 3**

**Form of Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                  :
In re:                  :    Chapter 11
                  :
QUIRKY, INC., *et al.*[1]    :    Case No. 15-12596 (MG)
                  :
        Debtors.      :    (Jointly Administered)
                  :
                  :
                  :
------------------------------------------------------------- x

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF
## CERTAIN CONTRACTS RELATED TO THE BUSINESS OF QUIRKY, INC.

        **PLEASE TAKE NOTICE** that, on October 1, 2015, Quirky, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. 60] (the "Quirky Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale (the "Sale") of the assets related to the business of Quirky, Inc., (ii) approving the form and manner of notice of the Auction and Sale Hearing, (iii) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (iv) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Sale Motion.  On October ___, 2015, the Bankruptcy Court entered an order (the "Quirky Bidding Procedures Order") approving certain bidding procedures attached thereto as Exhibit 1 (the "Quirky Bidding Procedures").

> **Copies of the Quirky Sale Motion, Quirky Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Rust Omni Management, at www.quirkybankruptcy.com , or upon request by contacting Rust Omni Management, by telephone at 866-989-6144, or by e-mail at quirky@omnimgt.com.**

        **PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Quirky Assets (as defined in the Quirky Bidding Procedures).  The Debtors have indicated on Schedule A attached hereto a list of the Debtors' executory contracts that may be assumed and assigned by the Debtors to the Successful Bidder (each, a "Contract") along with

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Quirky, Inc. (2873); Wink, Inc. (8826); and Undercurrent Acquisition, LLC (9692).  The Debtors' principal offices are located at 606 West 28th Street, Seventh Floor, New York, NY 10001.

the cure amounts that the Debtors believe must be paid to cure all prepetition defaults (in each instance, the "Cure Cost").

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the sale of the Quirky Assets at a hearing scheduled to commence on November 24, 2015 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Martin Glenn, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10036; *provided, however,* if the Committee files a notice of objection with the Court on or before November 23, 2015 at 4:00 p.m. (prevailing Eastern Time) with respect a Qualified Bid submitted by a Successful Bidder, the Sale Hearing with respect to such Successful Bid will be adjourned and rescheduled for December 7, 2015 at 9 a.m. (prevailing Eastern Time) with respect to the Quirky Assets set forth in the Committee's Notice of Objection.

PLEASE TAKE FURTHER NOTICE that if you agree with the Cure Costs listed on Schedule A, you need not take any further action.

PLEASE TAKE FURTHER NOTICE that any party seeking to object to the validity of the Cure Costs (a "Cure Objection") as determined by the Debtors, or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Contracts in order to be assigned to the Successful Bidder, must file an objection, which must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the *Interim Order Implementing Certain Notice and Case Management Procedures* [Docket No. 44] entered in these chapter 11 cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than November 12, 2015 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| Quirky, Inc.<br>606 West 28th Street<br>New York, New York 10010<br>Attn: Charles Kwalwasser, Esq.<br>  Ed Kremer | Cooley LLP<br>1114 Avenue of the Americas<br>New, York, New York 10036<br>Attn: Jeffrey L. Cohen, Esq.<br>  Michael A. Klein, Esq. |
| **United States Trustee** | **Counsel to the Stalking Horse Bidder (if any)** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Paul Schwartzberg, Esq. | |
| **Counsel to Comerica Bank** | **Proposed Counsel to the Committee** |
| Sheppard Mullin | Otterbourg P.C. |

| | |
|---|---|
| 30 Rockefeller Plaza<br>New York, New York 10112<br>Attn:  Bill Wyatt, Esq. | 230 Park Avenue<br>New York, NY 10169<br>Attn: Melanie L. Cyganowski, Esq.<br>Kevin Zuzolo, Esq. |

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED CURE COST SHALL BE (A) FOREVER BARRED FROM OBJECTING TO THE CURE COSTS AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT OT THE CONTRACTS, AND THE DEBTORS AND THE SUCCESSFUL BIDDER SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE COSTS LISTED ON EXHIBIT A, AND (B) FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS OR THE SUCCESSFUL BIDDER THAT ANY ADDITIONAL AMOUNTS ARE DUE OR OTHER DEFAULTS EXIST OR ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

**PLEASE TAKE FURTHER NOTICE** that the hearing with respect to the Cure Objections may be held (i) at the Sale Hearing, or (ii) on such other date as the Bankruptcy Court may designate.  To the extent the Debtors and non-Debtor counterparty to a Contract are able to consensually resolve the Cure Objection prior to the Sale Hearing, the Debtors shall promptly provide notice to the Committee and the Successful Bidder of such resolution.  To the extent the Debtors and non-Debtor counterparty to a Contract are unable to consensually resolve the Cure Objection prior to the Sale Hearing, then the amount to be paid with respect to the Cure Cost will be determined at the Sale Hearing or at such other date and time as may be fixed by the Bankruptcy Court.

Dated:  October ___, 2015
        New York, New York

                              Jeffrey L. Cohen
                              Michael A. Klein
                              Richelle Kalnit
                              1114 Avenue of the Americas
                              New York, New York 10036
                              Telephone:  (212) 479-6000
                              Facsimile:  (212) 479-6275

*Proposed Counsel for the Debtors and Debtors in Possession*

## SCHEDULE A

**CONTRACTS**

| Counterparty | Counterparty Address | Title/Description of Contract | Cure Cost |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |