**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
QUIRKY, INC., *et al.*[1]                                          :    Case No. 15-12596 (MG)
                                                                   :
        Debtors.                                                   :    (Jointly Administered)
                                                                   :
                                                                   :
                                                                   :
                                                                   :
------------------------------------------------------------------ x

## ORDER AUTHORIZING (I) THE SALE OF CERTAIN OF THE DEBTORS' ASSETS RELATED TO THE QUIRKY BUSINESS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES, (II) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT, (III) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order (this "Order") , pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing and approving the following:

(i)     the sale of the Quirky Assets (as defined below);

(ii)    the entry into, performance under and terms and conditions of the Asset Purchase Agreement dated as of November 2, 2015 (collectively with all related agreements, amendments, documents or instruments and all exhibits, schedules and addenda to any of the foregoing, the "Quirky Agreement"), substantially in

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Quirky, Inc. (2873); Wink, Inc. (8826); and Undercurrent Acquisition, LLC (9692).  The Debtors' principal offices are located at 606 West 28th Street, Seventh Floor, New York, NY 10001.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion.

the form attached hereto as **Exhibit 1**, whereby Quirky has agreed to sell, and Q Holdings LLC (the "Buyer") has agreed to buy, certain of Quirky's assets (specifically as set forth and defined in the Quirky Agreement, the "Quirky Assets"), free and clear of all Claims (as defined herein), liabilities, rights, interests, setoff rights and encumbrances, and where Quirky has agreed to transfer, subject only to liabilities, if any, that the Buyer expressly agreed to assume under the Quirky Agreement and only to the extent such liabilities are specifically set forth and defined in the Quirky Agreement (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Quirky Agreement, the "Sale of Quirky Assets"); and

(iii)    the assumption by and assignment to the Buyer of certain executory contracts and unexpired leases of Quirky; and

(iv)    other related relief;

and the Court having entered an order approving the bidding procedures and granting certain related relief on October 27, 2015, 2015 [Docket No. 186] (the "Quirky Bidding Procedures Order"); and an auction having been conducted in accordance with the Quirky Bidding Procedures Order (the "Auction"); and the Buyer having submitted the highest or otherwise best offer for the Quirky Assets; and the Court having conducted a hearing on the Motion on December 7, 2015 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Quirky Agreement, the Quirky Bidding Procedures Order, the record of the hearing before the Court on October 23, 2015 at which the Quirky Bidding Procedures Order was approved; and all objections to the Sale of Quirky Assets and the Quirky Agreement filed in accordance with the Quirky Bidding Procedures Order; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings had before the Court, and all objections and responses

to the relief requested in the Motion having been heard and overruled, continued or resolved on the terms set forth in this Order, and it appearing that due notice of the Motion, the Quirky Agreement, the Quirky Bidding Procedures Order and the Auction having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:**[3]

**I.**     **Jurisdiction, Venue, and Final Order**

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

**II.**     **Notice of the Sale of Quirky Assets, Quirky Agreement, Sale Hearing, Auction and the Cure Amounts**

C.    On September 22, 2015 (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

Code (the "<u>Chapter 11 Cases</u>").  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.      As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the Quirky Agreement and the sale of Quirky Assets has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rules 2002-1 and 6004-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, the Quirky Agreement and the sale of Quirky Assets as required by the Quirky Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the Quirky Agreement or the sale of Quirky Assets is or shall be required.

E.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

III.     <u>Marketing Process</u>

F.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors and their professionals have complied in all respects with the Quirky Bidding Procedures Order.  The Debtors and their professionals have, under the circumstances, adequately and appropriately marketed the Quirky Assets.  The bidding process was duly noticed and conducted in a diligent, non-collusive, fair and good faith manner, and the bidding process set forth in the Quirky Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to qualify as a bidder, participate in the Auction and to make a higher or otherwise better offer to purchase the Quirky

Assets.  The Debtors (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Quirky Assets, and (ii) considered any bids submitted on or before the deadline established by the Court for the submission of bids.

G.    The Buyer is the Successful Bidder for the Quirky Assets in accordance with the Quirky Bidding Procedures Order.  The Buyer and its representatives have complied in all respects with the Quirky Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Quirky Agreement, and the sale and the Quirky Agreement likewise comply with the Quirky Bidding Procedures Order and all other applicable orders of this Court.

**IV.    <u>Highest or Otherwise Best Offer; Business Judgment</u>**

H.    The Quirky Agreement, including the form and total consideration to be realized by Quirky under the Quirky Agreement, (i) constitutes the highest or otherwise best offer received by Quirky for the Quirky Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

I.    Quirky's determination that the consideration provided by the Buyer under the Quirky Agreement constitutes the highest or otherwise best offer for the Quirky Assets constitutes a valid and sound exercise of Quirky's business judgment.

J.    Consistent with their fiduciary duties, Quirky has demonstrated good, sufficient and sound business reasons and justifications for entering into the sale of Quirky Assets and the performance of their obligations under the Quirky Agreement, including, but not limited to, the fact that (i) the consideration provided by the Buyer under the Quirky Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative, including a separate liquidation of the Quirky Assets; and (ii) unless the

sale is concluded expeditiously as provided for in the Motion and pursuant to the Quirky Agreement, recoveries of creditors will be diminished.

**V.**      **Good Faith; Arms' Length Sale**

K.      The sale process engaged in by Quirky, including, without limitation, the Quirky Bidding Procedures set forth in the Quirky Bidding Procedures Order and the negotiation of the Quirky Agreement, was at arms' length, non-collusive, in good faith, for fair value and substantively and procedurally fair to all parties.

L.      The Debtors, the Buyer and their respective representatives have complied, in good faith, in all respects with the Quirky Bidding Procedures Order.

M.      The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with these proceedings. None of the Debtors or the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.

N.      The Quirky Agreement and the sale of Quirky Assets contemplated thereunder were proposed, negotiated and entered into by and among Quirky and the Buyer without collusion, and none of the Debtors or the Buyer has engaged in any conduct that would cause or permit the Quirky Agreement or the sale of Quirky Assets to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

O.      Neither the Buyer nor any of its affiliates, present or contemplated members, officers, directors, shareholders or any of their respective successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling shareholders exists between the Debtors and the Buyer.

P.      The Quirky Agreement was not entered into, and neither Quirky nor or the Buyer has entered into the Quirky Agreement or proposes to consummate the sale of Quirky Assets, for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors.  Neither Quirky nor the Buyer is entering into the Quirky Agreement, or proposing to consummate the sale of Quirky Assets, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

Q.      The form and total consideration to be realized by Quirky under the Quirky Agreement constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Quirky Assets.

## VI.      Corporate Authority

R.      Quirky (i) has full corporate or other power to execute, deliver and perform their obligations under the Quirky Agreement and the sale of Quirky Assets contemplated thereby, and entry into the Quirky Agreement has been duly and validly authorized by all necessary corporate or similar action; (ii) has all of the corporate or other power and authority necessary to consummate the sale of Quirky Assets contemplated by the Quirky Agreement; and (iii) has taken all actions necessary to authorize and approve the Quirky Agreement and the sale of Quirky Assets contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Quirky Agreement, are required for the Debtors to consummate such sale of Quirky Assets.

## VII.      Section 363 Is Satisfied

S.      The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.  Accordingly, appointment of a consumer privacy

ombudsman pursuant to sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

T.    The Quirky Assets constitute property of the Debtors' estates and exclusive title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

U.    The sale of all Quirky Assets to the Buyer under the terms of the Quirky Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Quirky Assets will be free and clear of any and all Claims (except as expressly provided in the Quirky Agreement), the transfer of the Quirky Assets to the Buyer will be free and clear of all Claims and will not subject the Buyer or any of the Buyer's assets to any liability for any Claims whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability). All holders of Claims who did not object, or withdrew their objections to the sale of Quirky Assets, are deemed to have consented to the sale of Quirky Assets pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Claims are adequately protected – thus satisfying section 363(e) of the Bankruptcy Code – by having their Claims, if any, attach to the proceeds of the sale of Quirky Assets ultimately attributable to the property against or in which they assert a Claim or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such Claim holder had prior to the sale of Quirky Assets, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

V.    The Buyer would not have entered into the Quirky Agreement and would not consummate the sale of Quirky Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Quirky Assets was not free

and clear of all Claims or if the Buyer would, or in the future could, be liable for any Claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Buyer as set forth in the Quirky Agreement or in this Order.  The Buyer asserts that it will not consummate the sale of Quirky Assets unless the Quirky Agreement specifically provides, and this Court specifically orders, that none of the Buyer, its assets or the Quirky Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Claim, or (ii) any successor or transferee liability for any of the Debtors.

W.    The Buyer is not a successor to the Debtors or their respective estates by reason of any theory of law or equity, and neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their respective estates, except as otherwise expressly provided in the Quirky Agreement or this Order.  The Buyer is not a continuation of the Debtors or their respective estates and there is no continuity between the Buyer and the Debtors.  The Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and the sale of Quirky Assets do not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors.

X.    The transfer of the Quirky Assets to the Buyer under the Quirky Agreement will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Quirky Assets free and clear of all Claims.  The transfer of the Quirky Assets to the Buyer will vest the Buyer with good and marketable title to the Quirky Assets.

Y.    There is no legal or equitable reason to delay the sale of Quirky Assets. The sale of Quirky Assets must be approved and consummated promptly in order to preserve the

value of the Debtors' assets.  All factual predicates to the waiver of any stay of this Order under Bankruptcy Rules 6004(h) and 6006(d) have been satisfied.

Z.    The Debtors have demonstrated both (i) good, sufficient and sound business judgment, purposes and justifications; and (ii) compelling circumstances for the Sale of Quirky Assets pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the sale of Quirky Assets, the value of the Debtors' assets will be harmed.  To maximize the value of the Quirky Assets, it is essential that the sale of Quirky Assets occur within the timeframe set forth in the Quirky Agreement.  Time is of the essence in consummating the sale of Quirky Assets.

AA.    Entry into the Quirky Agreement and consummation of the sale of Quirky Assets do not constitute a <u>sub rosa</u> chapter 11 plan.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

I.    <u>**General Provisions**</u>

1.    The Motion is granted to the extent provided herein.

2.    Any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

3.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**II.**      **Approval of the Quirky Agreement**

4.      The Quirky Agreement, all of the terms and conditions thereof, and consummation of the sale of Quirky Assets contemplated therein, are authorized and approved in all respects pursuant to section 363(b) of the Bankruptcy Code.  The failure specifically to include any particular provision of the Quirky Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Quirky Agreement be authorized and approved in its entirety.

5.      The Debtors and their respective officers, employees and agents are authorized and directed to take any and all actions necessary, appropriate or reasonably requested by the Buyer to perform, consummate, implement and close the Sale of Quirky Assets, including, without limitation, (i) the sale to the Buyer of all Quirky Assets, in accordance with the terms and conditions set forth in the Quirky Agreement and this Order, and (ii) executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the Quirky Assets, including any further cooperation after the Closing pursuant to the Quirky Agreement.  The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale of Quirky Assets or perform their obligations under the Quirky Agreement.

6.      All persons and entities are prohibited and enjoined from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Quirky Assets to the Buyer in accordance with the Quirky Agreement and this Order.

**III.**        <u>**Sale and Transfer Free and Clear of Claims**</u>

7.      Except as otherwise expressly provided in the Quirky Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Quirky Assets shall be sold free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of licensees or sublicensees (if any) under section 365(n) of the Bankruptcy Code or any similar statute, rights of tenants and subtenants (if any) under section 365(h) of the Bankruptcy Code or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or

disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership of the Quirky Assets or the operation of the business prior to the Closing Date), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability or related theories (all of the foregoing collectively being referred to in this Order as "Claims", and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), with all such Claims to attach to the proceeds of the Sale of Quirky Assets to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Quirky Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8.    At Closing, all of Quirky's right, title and interest in and to, and possession of, the Quirky Assets shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Buyer with good and marketable title to, the Quirky Assets.  All person or entities, presently or on or after the Closing, in possession of some or all of the Quirky Assets are directed to surrender possession of the Quirky Assets to the Buyer or its designees on the Closing or at such time thereafter as the Buyer may request.

9.    This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks

or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale of Quirky Assets contemplated by the Quirky Agreement.  The Quirky Assets are sold free and clear of any reclamation rights.

10.    Except as otherwise expressly provided in the Quirky Agreement, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against Quirky or the Quirky Assets arising under or out of, in connection with, or in any way relating to, Quirky, Quirky's predecessors or affiliates, the Quirky Assets, the ownership, sale or operation of the Quirky Assets and the business prior to Closing or the transfer of the Quirky Assets to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Buyer, its successors or assigns, their property or the Quirky Assets.  Following the Closing, no holder of any Claim shall interfere with the Buyer's title to or use and enjoyment of the Quirky Assets based on or related to any such Claim, or based on any action the Debtors may take in the Chapter 11 Cases.

11.    If any person or entity that has filed financing statements, mortgages, mechanic's Claims, lis pendens or other documents or agreements evidencing Claims against or in the Quirky Assets shall not have delivered to Quirky prior to the Closing of the Sale of Quirky Assets, in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all Claims that the person or entity has with respect to the

Quirky Assets, (a) the Debtors are hereby authorized and directed to execute and file such

statements, instruments, releases and other documents on behalf of the person or entity with

respect to the Quirky Assets; (b) the Buyer is hereby authorized to file, register or otherwise

record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall

constitute conclusive evidence of the release of all such Claims against the Buyer and the

applicable Quirky Assets; and (c) the Buyer may seek in this Court or any other court to compel

appropriate parties to execute termination statements, instruments of satisfaction and releases of

all such Claims with respect to the Quirky Assets.  This Order is deemed to be in recordable

form sufficient to be placed in the filing or recording system of each and every federal, state, or

local government agency, department or office.  Notwithstanding the foregoing, the provisions of

this Order authorizing the sale and assignment of the Quirky Assets free and clear of Claims

shall be self-executing, and none of the Debtors nor the Buyer shall be required to execute or file

releases, termination statements, assignments, consents or other instruments in order to

effectuate, consummate and implement the provisions of this Order.

        12.    To the maximum extent permitted under applicable law, the Buyer shall be

authorized, as of the Closing Date, to operate under any license, permit, registration and

governmental authorization or approval of the Debtors with respect to the Quirky Assets, and all

such licenses, permits, registrations and governmental authorizations and approvals are deemed

to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

        13.    No governmental unit (as defined in section 101(27) of the Bankruptcy

Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit,

license or similar grant relating to the operation of the Quirky Assets on account of the filing or

pendency of the Chapter 11 Cases or the consummation of the Sale of Quirky Assets to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

**IV.      No Successor or Transferee Liability**

14.      The Buyer shall not be deemed, as a result of any action taken in connection with the Quirky Agreement, the consummation of the Sale of Quirky Assets contemplated by the Quirky Agreement, or the transfer or operation of the Quirky Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

15.     The Buyer shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Quirky Assets or (b) any Claims against the Debtors or any of their predecessors or affiliates.  The Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Quirky Assets prior to the Closing.  The Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 *et seq.*) ("WARN") or the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), or any foreign, federal, state or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Buyer's purchase of the Quirky Assets by the Buyer.

16.     Except as otherwise provided in the Quirky Agreement, nothing in this Order or the Quirky Agreement shall require the Buyer to (a) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment; or (b)

assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

17.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, or its assets (including the Quirky Assets), with respect to any (a) Claim or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien, claim, interest or encumbrance; (iv) asserting any setoff, right of subrogation or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Quirky Assets or conduct any of the businesses operated with such assets.

**V.      Good Faith; Arms' Length Sale**

18.     The Quirky Agreement has been negotiated and executed, and the Sale of Quirky Assets contemplated by the Quirky Agreement are and have been undertaken, by Quirky, the Buyer and their respective representatives at arms' length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale

shall not affect the validity of the Sale of Quirky Assets, unless such authorization and consummation of the sale are duly and properly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

19.    Neither Quirky nor the Buyer has engaged in any conduct that would cause or permit the Quirky Agreement or the Sale of Quirky Assets to be avoided or costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Quirky Assets under the Quirky Agreement is fair and reasonable, and the Sale of Quirky Assets may not be avoided under section 363(n) of the Bankruptcy Code.

**VI.    Other Provisions**

20.    Section 2.2(g) (Excluded Assets) of the Quirky Agreement is deleted in its entirety and replaced with the following:

> All causes of action that the Seller may hold against any current or former director, officer or employee of Seller for breach of fiduciary duty or claims of a similar nature, provided that any such causes of action, whenever arising, that may be asserted against a director, officer or employee of Seller who becomes a director, officer, or employee of the Purchaser may be asserted against such Person solely to the extent of available insurance proceeds and may not be asserted to recover from the personal assets of such Person.

21.    In full resolution of the objections filed by General Electric and related entities (collectively "GE") [Docket Nos. 182, 225] and the matters raised therein (i) all GE co-branded inventory, including but not limited to that set forth in the exhibit attached to GE's supplemental objection [Docket No. 225] (the "Co-Branded Inventory"), shall be removed from the Sale of Quirky Assets, and the Buyer agrees that those assets are not being sold to it, and (ii) the purchase price for the consideration of the Sale of Quirky Assets shall be reduced by

$175,000.  Quirky shall retain the right to sell the Co-Branded Inventory to a third party only

with the consent of GE or upon motion to and approval by the Court; and *provided further* that,

in connection with such sale of Co-Branded Inventory, the Buyer shall have the right of first

refusal as to any approved sale to a third party.

22.      In full resolution of the objection filed by Flextronics Sales and Marketing

(A-P), Ltd. and other related entities (collectively, "Flex") [Docket No. 185] and the matters

raised therein (i) Quirky will transfer to Flex, free and clear of liens, claims, encumbrances and

interests pursuant to Section 363 of the Bankruptcy Code,  all of Quirky's right, title and interest

related in any way to Norm and P6-Ohno, including, without limitation, the patent applications,

know-how, prototypes, design, engineering and other work, and other intellectual property to the

extent embodied in those products and all of Quirky's Statement of Work 103 (Norm) and

Statement of Work 105 (P6-Ohno), and the Buyer agrees that those assets are not being sold to it,

(ii) Flex consents to Quirky's transfer to the Buyer of Spotter, IFM (Infant Formula Mixer) and

Poppy and will not assert any cure claim or other right to current or future payment for the same

against either the Debtors or the Buyer; and (iii) Flex shall have no obligation to provide further

design or other support to Quirky or the Buyer.  For additional specificity, the following assets

are hereby deleted from the disclosure schedules to the Quirky Agreement and are not being

conveyed as part of the sale to Purchaser:  (i) the patent application for Norm (Disclosure

Schedules, Page A-15) and (ii) the patent application Battery Kiosk (Disclosure Schedules, Page

A-15).

23.      In consideration for Flex's withdrawal of its objection to the sale of the

Quirky Assets and the transfer of the products to Flex as set forth above, Flex agrees to provide

the Debtors with the right to continued use and occupancy, on a rent-free basis, to (i) that portion

of the premises located at 606 West 28th Street, New York, NY 10001 currently occupied by

Wink, Inc. and the Debtors' remaining furniture, fixtures and equipment (the "FF&E"); or (ii)

any space to which Wink, Inc. and the FF&E may move, for a period concluding on the earlier of

March 31, 2016 or the effective date of a plan of liquidation (subject to a reasonable extension in

the event that the Debtors' plan of liquidation is not confirmed prior to March 31, 2016).  In

addition, Quirky shall retain the existing units on hand of the Norm inventory.

24.    The purchase price for the consideration of the Sale of Quirky Assets shall

be reduced by $60,000 as a result of the resolution of the Flex objection set forth above.

25.    Notwithstanding anything in the Quirky Agreement to the contrary, the

Quirky Assets acquired by the Buyer, excluding those Quirky Assets that were not submitted by

Users shall not include any Product Idea, Inventions, or Intellectual Property Rights that are

unrelated to an Accepted Product Idea (collectively, the "Undeveloped Inventions") unless the

Undeveloped Inventions are identified by the Buyer on a schedule to be delivered by the Buyer

and filed with the Bankruptcy Court no later than one hundred twenty (120) days following the

closing of the Sale. All claims, rights, and interests in the Undeveloped Inventions that are not

identified on such schedule will revert to the respective User as if such Undeveloped Inventions

were never submitted to the Site. No later than one year following the Closing Date, the Buyer

shall deliver an amended schedule to be filed with the Bankruptcy Court that will remove any

Undeveloped Inventions from the schedule that the Buyer has chosen not to pursue for

development and/or commercialization. For purposes of this Paragraph, the terms Product Idea,

Inventions, Intellectual Property Rights, Accepted Product Idea, User, and Site shall have the

meanings ascribed to them in the Quirky.com Terms of Use and Privacy Policy, effective as of

June 10, 2015.

26.    Quirky, the Buyer, Comerica Bank ("Comerica"), and the Official Committee of Unsecured Creditors (the "Committee") agree that $325,000 of the proceeds of the Sale (the "Community Fund") shall be reserved and earmarked for distribution to the account holders at Quirky.com (the "Community Members") in consideration of the transfer of the Quirky Assets to the Buyer free and clear of the interests of the Community Members. The allocation of the Community Fund shall be determined by the Committee (or any estate representative vested with the rights and privileges of the Committee) with reasonable and appropriate notice to all known Community Members of not less than twenty-one (21) days prior to the distribution of the Community Fund. Quirky and the Buyer agree to provide the Committee (or the estate representative charged with distribution of the Community Fund) with access to all reasonable information that may be necessary for determining identification of Community Members, as well as appropriate allocations and distributions of the Community Fund. All administrative fees associated with the Community Fund shall be satisfied from the Community Fund.

27.    In consideration for the creation of the Community Fund, the Committee acknowledges and agrees that (i) as of the Petition Date, Comerica has a first priority security interest in and liens on the Quirky Assets that are being transferred to the Buyer pursuant to this Order and the Co-Branded Inventory owned by Quirky (the "Acknowledged Liens"); (ii) the Acknowledged Liens are valid, binding, enforceable, non-avoidable and properly perfected as of the Petition Date; and the Committee shall waive all potential claims and challenge rights with respect to the Acknowledged Liens provided for in the *Order (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Certain Related Relief* [Docket No. 119] (the "Final Cash Collateral Order"). Notwithstanding the waiver of all

potential claims and challenge rights with respect to the Acknowledged Liens, the Committee retains all other potential claims and challenge rights as provided in the Final Cash Collateral Order, including, without limitation, the right to challenge any liens on the assets of Wink, Inc. and the proceeds thereof. Nothing in this Order shall prejudice the Committee from seeking substantive consolidation of these chapter 11 cases.

28.    Upon the closing of the Sale of Quirky Assets, Comerica shall receive prompt payment from the proceeds of the Sale of Quirky Assets in the amount of $3,025,000 on account of its prepetition secured claim against Quirky. Upon the closing of any sale of Co-Branded Inventory owned by Quirky, Comerica shall receive prompt payment of the proceeds that result from such sale on account of its prepetition secured claim against Quirky.

29.    The requirements set forth in Bankruptcy Rules 6003(b), 6004 and 6006 and Local Bankruptcy Rules 6004-1 and 9013-1 have been satisfied or otherwise deemed waived.

30.    The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to give any notice permitted by the Quirky Agreement or to enforce any of its remedies under the Quirky Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; *provided however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

31.    The provisions of this Order and the Quirky Agreement are non-severable and mutually dependent.

32.    The Quirky Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court; *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

33.    The Court shall retain exclusive jurisdiction (for as long as the chapter 11 cases are open) to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Quirky Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale of Quirky Assets.  This Court retains jurisdiction to compel delivery of the Quirky Assets, to protect the Buyer and its assets, including the Quirky Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105(a), 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Quirky Assets to the Buyer.  Buyer may at its election enforce this Order in any other court of competent jurisdiction in defense of any Claims asserted against it by third parties or similar issues.

34.    As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d) or any similar rule that would delay the effectiveness of this Order.  Time is of the essence in closing the sale and Quirky and the Buyer intend to close the sale consummate the Sale of Quirky Assets as soon as possible.  Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

35.    This Order and the Quirky Agreement shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, any Debtor, any

holders of Claims in, against or on all or any portion of the Quirky Assets, all successors and assigns of the Buyer, the Debtors and their affiliates and subsidiaries and any subsequent trustee appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such chapter 11 plan or any order approving wind-down or dismissal of the Chapter 11 Cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the Quirky Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Quirky Agreement and such future plan or order, the terms of this Order and the Quirky Agreement shall control.

36.    To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Quirky Agreement or the Quirky Bidding Procedures Order, this Order shall govern and control.

**IT IS SO ORDERED.**
Dated: December 10, 2015
New York, New York

_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge